```
 ____ FILED        ____ LODGED
 ____ RECEIVED     ____ COPY

        FEB 0 8 2005

   CLERK U S DISTRICT COURT
      DISTRICT OF ARIZONA
 BY_____ DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIV 04-363 PHX JWS |
| | ) | |
| vs. | ) | ORDER FROM CHAMBERS |
| | ) | |
| LEAR JET, *et al.*, | ) | [Re:   Motion at Docket 51] |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  MOTION PRESENTED

At docket 51, Alberto Abed-Schebaikan, et al. ("Claimants") move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) and (6), or in the alternative, for a more definite statement pursuant to Rule 12(e).  The motion is opposed.  Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

The United States maintains that Jaime Ross-Castillo was the mastermind behind a fraudulent conspiracy to transfer funds from Inverlat bank accounts to a Swiss account as well as to other banks and exchange houses in the United States and

57

Mexico.[1]  Ross allegedly enlisted the services of two Inverlat bank employees—Maria Oropesa and Myriam Serdio—to implement his scheme.[2]  Oropesa's primary target was account holder Alejandro Romero Garcia.[3]  Romero has given sworn statements in which he denies knowledge of the transfers from his account to a Swiss account, which Ross controlled.[4]  Furthermore, expert handwriting analysis suggests that Romero's signatures associated with the Swiss account are forgeries.[5]  Investigators have traced most of the stolen funds "directly into the acquisition of the Defendant Lear (over $900,000), Defendant Agusta ($892,000), and Defendant Cessna (over $250,000) all of which are owned and controlled by Ross and [Alberto] Abed[-Schekaiban] through companies they own and control in Mexico."[6]  Furthermore, in the pending Swiss criminal case against Ross, he testified that he "invested $892,000 into Defendant Agusta."[7]

Serdio's bank transfers originated from the account of Enrique Giraud Mijares—an Inverlat bank account holder.[8]  The proceeds of the fraudulent transfers

---

[1]Doc. 3, ¶ 79 at 12.  Moreover, interviews and employee statements identified Ross as the originator of the scheme.  *Id.* ¶ 36 at 8.

[2]*See generally*, doc. 3, pp. 8-14 and 16-28.

[3]A chart on p. 11 of doc. 3 summarizes the alleged fraudulent transfers.

[4]*Id.* ¶ 50 at 9; *see also* pp. 14-16.

[5]*Id.* ¶ 51 at 9.

[6]*Id.* ¶ 75 at 12.

[7]*Id.* ¶ 260 at 39.

[8]*Id.* ¶ 107 at 16.  The chart on pages 23-28 itemizes the fraudulent transfers.

were traced to Mexico City jewelry stores.[9]  The government contends the jewelry stores were utilized to launder the funds.[10]  During the same general time period of the fraudulent transfers, substantial monetary transfers were made toward the purchase of the subject aircraft.[11]

The United States provides detailed information about the relationship between Ross and Abed and the Mexican and Irish Corporate Nominees they utilized to acquire aircraft and move money.[12]  Two such companies are the registered owners of defendant Agusta and Cessna—Casafin and Hartslope respectively.[13]  Corporate printouts "indicate[ ] that the companies were dormant until . . . the [ ] aircraft acquisitions commenced."[14]  "Ross and Abed identified their ownership interest in various Mexican and Irish corporations"[15]—Ross lists, *inter alia*, Hartslope, and Abed lists, *inter alia*, Casafin.[16]  The government has acquired Casafin's corporate files, but not those of Hartslope; however, Hartslope is "located at the identical address as the

---

[9]*Id.* ¶ 170 at 22.

[10]*Id.* ¶ 173 at 22.

[11]*Id.* ¶ 175 at 22.

[12]*Id.* at 33-37.

[13]*Id.* ¶ 20 at 6.

[14]*Id.* ¶ 227 at 34.

[15]*Id.* ¶ 242 at 36.

[16]*Id.* ¶¶ 243, 244 at 37.

other companies, and upon information and belief, has the same structure and purpose."[17]

Ross and Abed "clearly expressed to executives at . . . Agusta Aerospace, and Cessna Aircraft Corporation their intention of buying the defendants and contracting for the purchase of several other aircraft in order to equip Mexican airtaxi/charter airlines called Vuelamex, Vuelabus, and Servicios Integrales de Aviacion."[18]   Furthermore, the United States contends that defendants Cessna and Agusta were "paid in part with stolen Romero funds from the Ross Credit Suisse account."[19]

## III.  STANDARD OF REVIEW

A motion to dismiss for failure to state a claim made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  A dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[20] In reviewing a 12(b)(6) motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[21]  The court is not required to accept every conclusion asserted in the complaint as true; rather, the court examines "whether conclusory allegations follow from the description

---

[17]*Id.* ¶ 224 at 33.

[18]*Id.* ¶ 274 at 41.

[19]*Id.* ¶ 307 at 45.  *See also* chart at 45-46.

[20]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[21]*Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997) (citation omitted).

of facts as alleged by the plaintiff."[22]  A claim should only be dismissed if "it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[23]

"It is plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue."[24]  Any objection to venue must be raised in a motion or responsible pleading or the defense of improper venue may be waived.[25]  In assessing a motion to dismiss for improper venue, the complaint's allegations are accepted as true unless the defendant submits affidavits contradicting the complaint's allegations.[26] The court may consider facts outside the complaint.  All reasonable inferences and factual conflicts are resolved in favor of the plaintiff.[27]

## IV.  DISCUSSION

### A.    Motion to Dismiss - Venue and *In Rem* Jurisdiction

Claimants assert that plaintiff's complaint fails to establish this court's jurisdiction over defendants, or that Arizona is a proper venue for the present controversy. Specifically, claimants take issue with plaintiff's contention that jurisdiction and venue

---

[22]*Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (quoting *Brian Clewer, Inc. v. Pan Am. World Airways, Inc.*, 674 F. Supp. 782, 785 (C.D. Cal. 1986)).

[23]*Vignolo*, 120 F.3d at 1077 (citation omitted).

[24]5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1352, at 265 (2d ed 1990 and Supp. 1999) ("WRIGHT").

[25]*See* FED. R. CIV. P. 12(h).

[26]*See, e.g.,* WRIGHT § 1352 at 334-35 (Supp. 1999) (collecting and discussing authorities).

[27]*Id.* at 334-36.

are proper pursuant to 18 U.S.C. § 981(h), 28 U.S.C. § 1355, 28 U.S.C. § 1395, and 28 U.S.C. § 1345. The court addresses each argument in turn.

Claimants assert that 18 U.S.C. § 981(h) establishes "venue for civil forfeiture in the judicial district in which the 'defendant' owning the property is found or prosecuted if charged with a criminal violation."[28] Claimants contend that they do not reside in Arizona, have not been charged with any crime in Arizona, and therefore conclude that Arizona is an improper venue for the present controversy.[29] Section 981(h) directs, in pertinent part:

> In addition to the venue provided for in section 1395 of title 28 or any other provision of law, in the case of property of a defendant charged with a violation that is the basis for forfeiture of the property under this section, a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property is found or in the judicial district in which the criminal prosecution is brought.

In response, plaintiff concedes that "no indictments have been returned" in this case, but nevertheless contends that claimants' "arguments for the dismissal of the complaint lack logic."[30] The court disagrees. The express language of § 981(h) clearly limits its application to the seizure of property from a defendant charged with a violation that forms the basis for the forfeiture. Absent an alleged violation, § 981(h) fails to establish Arizona as a proper venue.

---

[28]Doc. 51 at ¶ 2.

[29]*Id.*

[30]Doc. 54 at 5.

Properties subject to forfeiture to the United States are described by

18 U.S.C. § 981.  In particular, § 981(a)(1)(A) identifies the following as subject to

forfeiture:

> Any property, real or personal, involved in a transaction or
> attempted transaction in violation of section 1956, 1957 or 1960 of
> this title, or any property traceable to such property.

The United States' complaint asserts that the three defendant aircraft named in the

complaint were purchased with funds laundered in violation of 18 U.S.C. §§ 1956 and

1957.  For this reason, the United States asserts that the defendant aircraft are

properties "involved in" or "traceable" to a §§ 1956 or 1957 violation, and are therefore

subject to forfeiture.

The United States premises this court's jurisdiction upon 28 U.S.C. § 1354.

Section 1354(a) of title 28 directs that "[t]he district courts shall have original jurisdiction

. . . of any action or proceeding for the recovery or enforcement of any fine, penalty, or

forfeiture."  With regard to venue, the same statute instructs that:

> (b)(1) A forfeiture action or proceeding may be brought in –
>     (A) the district court for the district in which any of the acts or
>     omissions giving rise to the forfeiture occurred, or
>     (B) any other district where venue for the forfeiture action or
>     proceeding is specifically provided for in section 1395 of this
>     title or any other statute.
> (2) Whenever property subject to forfeiture under the laws of the
> United States is located in a foreign country, or has been detained
> or seized pursuant to legal process or competent authority of a
> foreign government, an action or proceeding for forfeiture may be
> brought as provided in paragraph (1), or in the United States
> District court for the District of Columbia.

Section 1395 of title 28 provides, in pertinent part, that:

(a) A civil proceeding for the recovery of a pecuniary fine, penalty or forfeiture may be prosecuted in the district where it accrues or the defendant is found.
(b) A civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found.
(c) A civil proceeding for the forfeiture of property seized outside any judicial district may be prosecuted in any district into which the property is brought.

With respect to defendant Lear Jet, the United States asserts that venue is appropriate in the District of Arizona because some of the acts giving rise to the forfeiture are alleged to have occurred in Arizona.  The United States asserts that the Lear Jet was sold and delivered to claimant Ross in Tucson, Arizona,[31] that Ross visited Tucson to conduct a pre-delivery inspection of the Lear Jet,[32] and that negotiations between claimants and the seller of the Lear Jet also took place in Tucson.[33]  The complaint additionally alleges that subsequent to purchasing the Lear Jet, claimants attempted to conceal their ownership in the aircraft by registering it under the name of a Delaware corporation, Wilmington Trust Company.[34]

A violation of section 1956(a)(1) occurs when:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such financial transaction which in fact involves the proceeds of specified unlawful activity –
(B) knowing that the transaction is designed in whole or in part –

_____

[31]Doc. 3 at ¶ 177.

[32]Id. at ¶ 188.

[33]Id. at ¶ 179.

[34]Id. at ¶ 182.

-8-

> (I) to conceal or disguise the nature, the location, the
> source, the ownership, or the control of the process of
> specified unlawful activity.

The first amended complaint alleges that the funds used to purchase the Lear Jet were

the laundered proceeds of a scheme intended to defraud a foreign bank, and that

claimants were aware these funds represented the proceeds of unlawful activity.

Additionally, the complaint asserts that claimants attempted to conceal their ownership

of the Lear Jet by fraudulently registering it under another name.  In light of these

alleged facts, the United States has presented a *prima facie* violation of § 1956.

Consequently, venue is proper under § 1354(b)(1)(A), because the complaint alleges

that the acts giving rise to the forfeiture occurred in Arizona.  Alternatively, venue also

appears proper under § 1354(b)(1)(B), which directs that venue is appropriate in "any

other district where venue for the forfeiture action or proceeding is specifically provided

for in section 1395."  Section 1395 directs that a civil proceeding for forfeiture may be

brought "in the district where it accrues."[35]  The complaint asserts that the underlying

§ 1956 violation accrued, at least in part, in Arizona.  Venue, at least with respect to

defendant Lear Jet,  is therefore appropriate in Arizona.

With respect to the Agusta Helicopter and Cessna Caravan, claimants contend

that this court lacks venue and *in rem* jurisdiction because these aircraft have never

been seized by the United States, no acts or omissions giving rise to the forfeiture

occurred in Arizona, the owners of the aircraft are not in Arizona, and the owners are

not being prosecuted in Arizona.  In response, the United States concedes that the

above-referenced aircraft are presently in Mexico City, Mexico, but contends that venue

---

[35]28 U.S.C. § 1395.

-9-

is nevertheless appropriate pursuant to § 1395(c).  That statute, as mentioned above, provides that a civil proceeding for forfeiture of property seized outside of any judicial district may be prosecuted in any district into which the property is brought.  The United States asserts that the Mexican government has placed the aircraft under "constructive seizure," and contends that Mexico is presently evaluating the United States' request that arrest warrants *in rem* be issued upon the defendant aircraft pursuant to the Treaty Between the United States of America and the United Mexican States on Mutual Legal Assistance ("MLAT").[36]  Section 1355(b)(2) of title 28 provides:

> Whenever property subject to forfeiture under the laws of the
> United States is located in a foreign country, or has been detained
> or seized pursuant to legal process or competent authority of a
> foreign government, an action or proceeding for forfeiture may be
> brought as provided in paragraph (1), or in the United States
> District court for the District of Columbia.

Paragraph (1) provides that a forfeiture action may be brought in any district where venue is provided for in section 1395.[37]  As discussed above, subsection (c) of § 1395 provides that, for property seized outside of any judicial district, a forfeiture proceeding may be prosecuted in any district into which the property is brought.

It is well established that before an *in rem* forfeiture proceeding is initiated, the court must have actual or constructive control of the property to be seized.[38]  "*In rem* jurisdiction over property in a foreign country exists if there is a seizure of the property

---

[36]Doc. 54 at 3-4.

[37]28 U.S.C. § 1355(b)(1)(B).

[38]*The Brig Ann*, 13 U.S. (9 Cranch) 289, 291 (1815); *United States v. James Daniel Good Real Property*, 510 U.S. 43, 58 (1993).

-10-

that gives the court constructive control over the property."[39]  The United States asserts

that the Mexican government issued seizure orders against the above-referenced

aircraft on or about February 3, 2004,[40] contends that the United States and Mexican

governments are "jointly engaged in the investigation of the criminal acts described in

the complaint," but acknowledges that the Mexican government is still "in the process of

evaluating" the United States' MLAT request for issuance of *in rem* arrest warrants.[41]

Thus, the United States concedes, as it must, that this court presently lacks actual

control over the two aircraft.  However, the United States asserts that the Mexican

government is cooperating with the United States in this matter, and that, pursuant to

the terms of the MLAT, Mexico is obligated to comply with the United States' MLAT

request.  Thus, the United States appears to have constructive control over the aircraft,

which establishes this court's *in rem* jurisdiction over the aircraft.  However, the United

States' constructive control is premised upon the continued cooperation of the Mexican

government.  Should the Mexican authorities decline the United States' request to issue

*in rem* arrest warrants, or should the aircraft remain in Mexico City, this court would no

longer be an appropriate venue for the forfeiture action because § 1395(c) requires that

property seized outside of the judicial district must be brought into the district before

venue is proper.  Additionally, if the Mexican government declines the United States'

request to issue *in rem* arrest warrants, then this court could no longer exercise *in rem*

---

[39]*United States v. All Funds on Deposit in Any Accounts Maintained in the Names of Meza or Castro*, 856 F. Supp. 759, 763 (E.D. N.Y. 1994) (*citing Republic Nat. Bank of Miami v. United States*, 506 U.S. 80, 86-7 (1992)).

[40]Doc. 3 at ¶ 331.

[41]Doc. 54 at 4.

jurisdiction over the aircraft because it would lack constructive or actual control of the property.  For these reasons, the court will deny the present motion without prejudice as to the Agusta helicopter and the Cessna aircraft.  The United States shall, on or before **March 28, 2005**, cause to be filed documentation demonstrating the Mexican government's continued cooperation, namely, documentation demonstrating that defendants Augusta Helicopter and Cessna Caravan have been seized by the Mexican government pursuant to the United States' treaty request.  Failure by the United States to file such papers by March 28, 2005, would suggest the court lacks constructive or actual control over the Augusta and Cessna aircraft and support a renewed motion for dismissal because this court would lack *in rem* jurisdiction, and Arizona would be an improper venue for the forfeiture action.

### B.    Motion to Dismiss - Failure to State a Claim

Alternatively, claimants contend that the United States' complaint must be dismissed for failure to state claim to which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  With respect to the first, second, and third claims presented by the complaint, claimants assert that the United States has failed to plead the requisite knowledge for each cause of action, requiring dismissal.

### 1.    Counts 1 & 2

Claimants assert that a *prima facie* claim for violation of 18 U.S.C. § 1956 must allege that the transacted property represents the proceeds of some unlawful activity, that the claimants *knew* the property represents the same, and that the transaction was

-12-

conducted in order "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."[42]

As already discussed above, the complaint asserts that Ross was the mastermind behind a conspiracy to defraud a foreign bank and launder the proceeds. The complaint asserts that Ross, as an agent of the conspiracy, knew the funds used to purchase the defendant aircraft represented the proceeds of unlawful activity, and that the claimants attempted to conceal their ownership of the Lear Jet by fraudulently registering it under another name. For this reason, Counts 1 and 2 of the complaint allege sufficient facts to establish *prima facie* violations of 18 U.S.C. § 1956.

### 2.    Count 3

With respect to the third claim, claimants assert that a *prima facie* violation of 18 U.S.C. § 1957 must allege that claimants engaged or attempted to engage in a monetary transaction involving more than $10,000, that the claimants *knew* the transacted property had been derived from some criminal activity, and that the transacted property was actually derived from specified unlawful activity.[43]   Additionally, claimants assert that a *prima facie* violation of 18 U.S.C. § 1957 requires the government to show that "the accounts from which the purchases were made did not have sufficient 'clean funds' to cover the purchase."[44]

As already discussed above, the complaint asserts that claimants conspired to purchase three aircraft for a sum well in excess of the $10,000 threshold, that the

---

[42]Doc. 51 at 6.

[43]*Id.* at 7.

[44]*Id.* at 10.

claimants knew the funds used to purchase the aircraft were derived from criminal activity, and that the transacted property was actually derived from a scheme to defraud a foreign bank. As such, the complaint asserts the statutory elements contained in 18 U.S.C. § 1957. As claimants note, however, Ninth Circuit precedent requires the government show that the funds used to purchase the defendant aircraft were necessarily the proceeds of specified illegal activity, and not "innocent" or "commingled" funds. In *U.S. v. Rutgard*,[45] defendant was charged with violating § 1957 for transferring over $7,000,000 to an offshore bank. The funds were transferred from an account in which the proceeds of illegal activity had been commingled with legitimately derived funds. The question before the Ninth Circuit was whether Rutgard's § 1957 conviction could be sustained on the theory that at least $10,000 of the illegal proceeds were incorporated in the approximately $7,000,000 transfer. The court observed that to prevail on the § 1957 violation:

> [T]he government need only show a single $10,000 deposit of criminally-derived proceeds. Any innocent money already in the account, or later deposited, cannot wipe out the crime committed by the deposit of criminally-derived proceeds. Commingling with innocent funds *can* defeat application of the statute to a withdrawal of less that the total funds in the account, but ordinarily that fact presents no problem to the government which, if it has proof of a deposit of $10,000 of criminally-derived funds, can succeed by charging the deposit as the crime.[46]

The Ninth Circuit concluded:

> The government did not take its possible course of charging Rutgard with deposits of over $10,000 of fraudulent proceeds. The government had the means of doing so because its accounting

---

[45]117 F.3d 1270 (9th Cir. 1997).

[46]*Rutgard*, 116 at 1292 (emphasis added).

-14-

> expert identified the large deposits Rutgard made.  But as Rutgard
> was neither charged nor convicted of *deposits* in violation of
> § 1957, we cannot uphold his convictions on that basis.  Rutgard's
> convictions may be upheld if he transferred out of the account *all*
> the funds that were in it or if there was a rule or presumption that,
> once criminally-derived funds were deposited, any transfer from the
> account would be presumed to involve them for the purpose of
> applying § 1957.[47]

So too here: The U.S. did not charge claimants under § 1957 for *depositing* the ill-gotten funds into a bank account, but instead chose to apply the statute to the transfer of funds out of the account for purposes of purchasing the defendant aircraft.  Had claimants transferred *all* funds from the account, then the transfer would be presumed to include the criminally-derived funds.[48]  The U.S. does not allege that all funds were transferred from the account, and has failed to assert that the remaining account balances are less that the amount of criminally-derived proceeds actually deposited.  Stated differently, no facts have been asserted showing that the funds used to purchase the aircraft were specifically the same funds derived from criminal activity.  Consequently, the complaint fails to assert sufficient facts supporting a violation of 18 U.S.C. § 1957, and this claim must be dismissed.

### 3.     Count 4

The fourth claim of the complaint alleges a violation of 18 U.S.C. § 981(a)(1)(C).[49]  That statute subjects the following properties to forfeiture:

_____

[47] *Id.*

[48] *See Id.*

[49] As presented, the complaint actually asserts a claim pursuant to 18 U.S.C. § 991(a)(1)(C), a statute that does not exist.  Presumably, the United States intended to present a claim pursuant to 18 U.S.C. § 981(a)(1)(C).

> Any property, real or personal, which constitutes or is derived from
> proceeds traceable to a violation of section 215, 471, 472, 474,
> 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 501, 510,
> 542, 545, 656, 657, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029,
> 1030, 1032, or 1344 of this title or a violation of section 1341 or
> 1343 of such title affecting a financial institution.

The United States asserts that the fourth count of the complaint "seeks the forfeiture of

the defendant aircraft as property acquired with proceeds directly traced to the fraud on

the Mexican bank,"[50] but fails to identify which of the underlying violations referenced by

the statute it relies upon for this claim.  Presumably, the U.S. premises this count upon

an underlying violation of § 1344, which prohibits the intentional execution, or attempted

execution, of a scheme or artifice designed: (1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property

owned by, or under the custody or control of, a financial institution, by means of false or

fraudulent pretenses, representations, or promises.[51]  As presented however, it is

unclear whether § 1344 is truly the underlying violation asserted in count 4.  The fourth

claim asserts facts that appear irrelevant to a § 1344 violation, including a recitation that

the amount in controversy exceeds $10,000 (as required under a violation of

18 U.S.C. § 1957), and reference to "a financial transaction occurring in whole or in part

in the United States."[52]  Claimants' motion to dismiss indicates their confusion as to

exactly what is being alleged by count 4, and the United States' response to the motion

---

[50]Doc. 54 at 16.

[51]18 U.S.C. § 1344.

[52]Doc. 3 at 51.

2em

to dismiss does nothing to clarify which underlying violation(s) the United States relies upon.

For these reasons, an amended claim is required.  On or before **March 28, 2005**, the United States shall file a second amended complaint which must omit Count 3 of the present complaint[53] and which must include an amended claim replacing what is Count 4 of the present complaint.  Counsel for the United States should review the sixth claim, which also asserts a violation of § 981(a)(1)(C), but cites to the underlying violation giving rise to the forfeiture.

### 4.    Count 5

The fifth claim presented by the complaint alleges a violation of 49 U.S.C. § 46306(b)(4) and asserts that defendant Lear Jet is subject to forfeiture "because the registration documents fail to show the real parties in interest, the real owners of the aircraft, are not U.S. citizens who are not authorized to register the aircraft in the United States."[54]  Subsection (a) of § 46306 directs that the statute "applies only to aircraft not used to provide air transportation."  In support of the motion to dismiss, claimants assert that the complaint fails to allege that the aircraft was not used to provide air transportation, and actually alleges facts supporting the aircraft's utilization for air transportation.[55]

---

[53]This is necessary because the court has dismissed that claim.  By like token, the amended complaint may not include the fifth claim in the present complaint.

[54]Doc. 3 at 52.

[55]Doc. 51 at 12.

In response, the United States contends that it perceived the requirement that the aircraft not be involved in air transportation as an affirmative defense available to claimants, not as an essential element of a § 46306 violation.  The United States asserts that pursuant to 18 U.S.C. § 983(c), the burden of proving that the aircraft was not used for purposes of air transportation shifts to claimants.  No such section exists under Title 18, and consequently provides no authority for the United States' position.

As pled by the complaint, claimants were "trying to organize a Mexican air-taxi business and intended to buy and register the [defendant] Lear."[56]  In light of this allegation, which the court must accept as true for purposes of this motion, § 46306 is inapplicable to the present controversy, and this count must be dismissed.

### 5.    Count 6

Count 6 of the complaint alleges a violation of 18 U.S.C. 981(a)(1)(C) with regard to defendant Lear Jet.  As discussed above, that statute authorizes the forfeiture of property involved in an specified underlying violation.  Unlike Count 4, which failed to identify which underlying violation the United States relied upon in support of its right to forfeiture, Count 6 asserts that the Lear Jet "represents proceeds of fraudulent statements made in a loan or credit application in violation of 18 U.S.C. § 1014."[57]  In support of this claim, the United States asserts that:

> [T]he financial statements presented to purchase the Lear Jet and obtain financing are inconsistent with the financial condition stated by Abed with regard to his obligations to the Mexican banks and Government which had supported his previously failed airline TAESA.  Specifically, the financial statement did not indicate in any

---

[56]Doc. 3 at 31, ¶ 202.

[57]Doc. 3 at 52.

-18-

> respect the financial liabilities which Abed seeks to avoid in Mexico. The financial statement by Ross is not consistent with, and failed to disclose, his criminal activity involved in the Oropesa and Serdio fraud upon Inverlat Bank, as described in detail in the complaint, including pending criminal charges in both Mexico and Switzerland.[58]

In support of the motion to dismiss, claimants assert that "[n]o facts are pled which allege that any false statements were made in a loan or credit application or that Claimants made any such statement knowing they were false," and consequently, the United States has failed to state a claim at law.[59]

The complaint alleges that before financing claimants' purchase of the defendant Lear Jet, Bombardier Capital Inc. ("BCI") required the production of personal financial statements from Abed and Ross.[60] Abed's statement reflected assets of $47,400,000 and liabilities of $2,700,000.[61] Ross' statement reflected assets of $13,415,000 and liabilities of $260,000.[62] The complaint asserts that Abed's financial representations to BCI are inconsistent with representations made by Abed in Mexico that he is personally bankrupt and has no assets.[63] Furthermore, the complaint alleges that Abed's financial representation to BCI was inconsistent with previous public statements by Abed that he was personally liable for over $150,000,000 in loans made to his former business,

---

[58]Doc. 54 at 16.

[59]Doc. 51 at 11.

[60]Doc. 3 at ¶ 237.

[61]*Id.* at ¶ 241.

[62]*Id.* at ¶ 240.

[63]*Id.* at ¶ 329.

-19-

TAESA.[64]  A violation of 18 U.S.C. § 1014 occurs when someone "knowingly makes any false statement or report, or willfully overvalues any land, property or security . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan."  As pled, the complaint merely asserts that Abed has made inconsistent statements regarding his financial situation.  Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Presumably, the United States is asserting that Abed's representations to BCI were false.  However, as pled, the complaint fails to assert that Abed did not actually have net assets of $44,700,000, or that he was aware he lacked such assets when he made the representation to BCI.  For this reason, the court orders the United States to include an amended version of this claim in the second amended complaint to be filed on or before **March 28, 2005**, which eliminates the vagueness in the present claim.  Of course, if the United States cannot plead such a claim consistent with Rule 11, it shall not include such a claim in its second amended complaint.

## IV.  CONCLUSION

For the reasons stated above, the motion at docket 51 is **GRANTED** in part and **DENIED** in part as follows:

> (1) The request to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) is **DENIED** without prejudice to a renewed request to be made promptly after the United States submits the information required in (2) below, if renewal is deemed appropriate by the moving party.

---

[64]*Id.* at ¶ 328.

(2) On or before **March 28, 2005**, the United States shall submit documentation demonstrating the status of the Mexican proceedings respecting the defendants Agusta helicopter and Cessna aircraft.

(3)  The request for dismissal of Counts 3 and 5 of the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**, and Counts 3 and 5 are **DISMISSED**.

(4)  The request to dismiss Counts 1, 2, 4, and 6 pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED, PROVIDED,** that the claims in what are numbered Counts 4 and 6 of the first amended complaint shall be either more fully stated to cure the defects noted in this order, or if cure cannot be accomplished in good faith then omitted, from the United States' second amended complaint which shall be filed not later than **March 28, 2005.**

DATED at Anchorage, Alaska, this ___ th day of February 2005.

JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

-21-